THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE W. TRIBETT, Defendant-Appellant.

First District (5th Division)   No. 76-823

Opinion filed November 18, 1977.—Rehearing denied December 16, 1977.

Francis X. Riley, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James B. Davidson, and John J. Rayman Lieberman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)), and was sentenced to a term of one to

three years. On appeal he contends that he was not proved guilty beyond a reasonable doubt.

The following pertinent evidence was adduced at trial.

*For the State*
*Thomas W. Irvine*

He is personnel manager for General Mills, Incorporated, and responsible for the security of its property. He conducted an investigation "shortly after" November 23, 1975, and determined that two IBM electric typewriters had been missing since before the close of business on the previous day. Their value was estimated to be approximately $200 each. They were in good condition and approximately five years old. He identified People's Exhibits 1 and 2 as photographs of the typewriters which he had "occasion to see" and whose sequence numbers he ascertained during his investigation. Defendant was not employed by General Mills, nor authorized to exert any control over the corporation's property.

On cross-examination he admitted that someone reported the theft of the typewriters to the Chicago Police Department, and that they were stolen late in the afternoon of November 22, 1975.

*Keith Whitman, Illinois State Police Trooper*

On November 23, 1975, at approximately 2:15 a.m. he stopped defendant who was driving a white Vega on the Calumet Expressway and informed him that the car had no tail lights. After inspecting defendant's drivers license, he checked the interior of the car with a flashlight and observed two typewriters and another object covered by a blanket. He asked what was in the back seat and defendant replied that it was phonographic equipment that he was taking to a relative for repairs. He identified People's Exhibits 1 and 2 as photographs of the items he had seen in the back seat of the vehicle. A radio check of the identification number of defendant's vehicle revealed it was reported stolen and that the license plates were issued to a 1967 Oldsmobile. He also noticed that the car's serial number was covered with tape. He placed defendant under arrest for possession of a stolen vehicle, and advised him of his constitutional rights. Defendant then told him that he had borrowed the car from "Doc," that he had gone to East Chicago Heights to meet "Doc" in a tavern, that "Doc" had failed to appear, and that defendant was on his way home to Chicago. Defendant also told him that he knew the typewriters were in the vehicle.

*Defendant on his own behalf*

On the evening of November 22, 1975, he went with Jimmy Turner and Richard Hayes to Chicago Heights to gamble. By approximately

midnight he had lost all of his money so he borrowed $50 from Hayes which he also lost. When Hayes asked for a return of his $50 he responded that he had more money at his home in Chicago, but that he had no way of getting there. Hayes then asked "Doc" to loan defendant his car. He had never seen "Doc" or his car before, and has not seen "Doc" since. Nor did he ever talk to "Doc." As Hayes handed him the keys to the car, they discussed the money he owed Hayes. He then went outside by himself to get the car, which was parked in a lot.

Officer Whitman stopped him while he was driving on the highway towards Chicago. They were soon joined by two plainclothes officers who searched the car. He couldn't explain the items that were in the car, because he "couldn't explain the car." He told the police that "the fellow lent me the car by the name of Doc," and that he did not know that the car was stolen.

He was arrested for the theft of the typewriters approximately two weeks after his November 23 arrest. He has a record which includes two marijuana convictions and a year's probation for criminal trespass to a vehicle. In 1975 he was placed on five years probation for possession of a controlled substance.

On cross-examination, he acknowledged that he knew where the car he took was because someone, apparently Hayes, told him it was "downstairs in the parking lot."

*Richard Hayes*

He has known defendant for four or five years. He substantially corroborated defendant's testimony except he testified that he asked "Doc" to take defendant to Chicago to pick up the money which defendant said he had there. "Doc" said he couldn't, but that he would let him use his car. "Doc" gave defendant the keys to the car. He did not know what was in the car or that it was stolen.

On cross-examination, he again denied having received any keys from "Doc."

*For the State on rebuttal*

*Keith Whitman, Illinois State Police Trooper*

After he stopped defendant's car, defendant told him that he was coming from a tavern in East Chicago Heights where he had to go to meet "Doc." Defendant did not indicate he was gambling.

*Dennis Wilson, Illinois State Police Trooper*

On December 16, 1975, he arrested defendant on a warrant charging him with the theft of two typewriters. Defendant told him that on November 23, when he was stopped by Officer Whitman, he was coming from a tavern in East Chicago Heights. Defendant also told him that he had met someone the night before in a tavern in Chicago by the name of

James or also known as "Doc" and that this person had given him his car. He further testified that defendant had then taken this person to Chicago Heights. Defendant indicated that he had been in that car the entire time.

OPINION

■■ Defendant contends that he was not proved guilty beyond a reasonable doubt. In a prosecution for theft the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which, in the absence of contrary facts and circumstances, may be sufficient to sustain a conviction. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19.) Although defendant here was found in the possession of two typewriters, he argues that the State failed to prove that the typewriters were stolen property and that his possession of them was recent, exclusive and unexplained.

He first argues that the only evidence adduced establishing that the typewriters were stolen property was Irvine's testimony that someone reported the items "stolen" on November 22, 1975. However, he claims this testimony is hearsay and therefore inadmissible.

■■ We disagree. Evidence admitted at the invitation of a defendant, even if improper, cannot be complained of on review. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) Here, defense counsel elicited the allegedly hearsay testimony during his cross-examination of Irvine, thereby waiving this contention for review. *People v. Johnson* (1975), 28 Ill. App. 3d 139, 327 N.E.2d 535.

■■ Defendant next argues that the typewriters could not have been stolen property at the time of defendant's arrest, because Irvine testified he had "occasion to see" the typewriters during his investigation which' took place "shortly after" November 23. However, in light of Irvine's other testimony that the typewriters were missing before the close of business on November 22, we must reject this argument. Moreover, the fact that defendant was in possession of the typewriters at the time of his arrest belies his suggestion that they had not yet been removed from the General Mills offices. Consequently, Irvine's obviously mistaken remark that he had "occasion to see" the typewriters during his November 23 investigation cannot be taken as evidence which raises a reasonable doubt as to defendant's guilt. *People v. Morehead* (1970), 45 Ill. 2d 326, 259 N.E.2d 8, *cert. denied* (1970), 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251.

■■ Defendant's argument that his possession was not shown to be recent, exclusive, and unexplained, is also without merit. "Recent" possession may be found as long as 25 days from the date of a theft. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551.) Here, defendant was apprehended with the typewriters one day after the theft was

determined clearly making defendant's possession "recent." The evidence adduced at trial also shows that defendant, as the driver and sole passenger of the automobile in which he was stopped was in control of the car and its contents. His possession of the items in the car was, therefore, exclusive. (*People v. Smith* (1974), 25 Ill. App. 3d 155, 323 N.E.2d 100; *People v. Quick* (1973), 15 Ill. App. 3d 300, 304 N.E.2d 143.) Likewise, although defendant offered an explanation for his possession at trial, any explanation offered must be one which the trier of fact finds to be reasonable, and acceptance or rejection of the explanation is for the trier of fact. (*People v. Hanson* (1968), 97 Ill. App. 2d 338, 240 N.E.2d 226.) Here, defendant's explanation at trial differed substantially from the accounts that he gave to two police officers on two separate occasions. Further, his trial testimony was partially contradicted by the defense witness who allegedly arranged for defendant to acquire the car he was driving. In light of the foregoing, we cannot say that the trial court erred in rejecting defendant's explanation as unreasonable.

Defendant sets forth one other argument in support of his contention that he was not proved guilty beyond a reasonable doubt. He argues, citing *People v. Baxa* (1971), 50 Ill. 2d 111, 277 N.E.2d 876, that his conviction for theft cannot stand because the State failed to prove that he knew the property was stolen. In *Baxa* our supreme court held that even exclusive possession of stolen property was insufficient to establish that a defendant knew that the property was stolen when he received it. However, defendant's reliance on *Baxa* is misplaced. In *Baxa* the crime charged was receiving stolen property in violation of section 16—1(d)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 16—1(d)(1)). In the instant case, however, defendant was charged with theft under section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)). As the Second District of this court explained in *People v. Dickerson* (1974), 21 Ill. App. 3d 977, 316 N.E.2d 519, the elements which must be proved under each statute are significantly different. Under section 16—1(d), the State must plead and prove that the property was stolen by another, and that at the time defendant received the property he knew or reasonably should have known, that the property was stolen. Neither of these elements is required under section 16—1(a). (21 Ill. App. 3d 977, 983, 316 N.E.2d 519, 524-25.) Consistent with this distinction, the supreme court held in *Baxa* that the special mental state required in a prosecution for receiving stolen property under section 16—1(d) could not be inferred merely from defendant's possession. In contrast, however, it has also held that in a prosecution such as the current one, in which the crime charged is theft under section 16—1(a), a conviction can be sustained when the defendant is found to be in recent, exclusive, and unexplained possession of the

stolen property. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19; *People v. Hawkins* (1963), 27 Ill. 2d 339, 189 N.E.2d 252.) Our previous discussion of these elements leads us to conclude that the State has proved the theft with which defendant was charged.

For the foregoing reasons we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.