THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiffs-Appellees, *v.* BRUCE MOURNING, Defendant-Appellant.

(No. 73-151;

Fifth District—April 2, 1975.

Samuel L. Xanders, of Godfrey, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Bruce Mourning, was indicted for the offense of unlawful delivery of a controlled substance. After a bench trial was held the circuit court of Madison County found the defendant guilty. The court denied the defendant's application for probation and imposed a sentence of not less than 2 years and not more than 6 years in the penitentiary. This appeal followed.

The defendant contends in this appeal that: (1) the trial court erred in denying his motion for a continuance; (2) he was not proven guilty beyond a reasonable doubt; and (3) the trial court erred in admitting State's Exhibits Nos. One and Two into evidence. We shall first discuss defendant's contention that he was not proven guilty beyond a reasonable doubt.

■■■ The defendant's argument in support of this contention is based upon the fact that all of the prosecution's evidence was circumstantial. Our supreme court discussed the quantum of circumstantial evidence necessary to support a conviction in *People v. Bernette*, 30 Ill.2d 359, 197 N.E.2d 436. Therein the court stated:

"[A] conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell*, 17 Ill.2d 328, 161 N.E.2d 309,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi*, 9 Ill.2d 169, 137 N.E.2d 256; *People v. Grizzel*, 382 Ill. 11, 46 N.E.2d 78.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt." (30 Ill.2d 359, 367, 197 N.E.2d 436, 441.)

The foregoing was quoted and relied upon in *People v. Marino*, 44 Ill. 2d 562, 256 N.E.2d 770. See also *People v. Holt*, 7 Ill.App.3d 646, 288 N.E.2d 245; *People v. Lenker*, 6 Ill.App.3d 335, 285 N.E.2d 807.

■■ Although a conviction based solely upon circumstantial evidence cannot stand if the proof supports any reasonable hypothesis of the defendant's innocence, the trier of fact is not required to search for a series of possible explanations compatible with innocence and elevate them to the status of a reasonable doubt. *People v. Huff*, 29 Ill.2d 315, 194 N.E.2d 230; *People v. Helm*, 10 Ill.App.3d 643, 295 N.E.2d 78.

In the instant case the defendant contends that the State failed to prove two propositions beyond a reasonable doubt: first, that a quantity of heroin was delivered to agent Lackey at the time and place alleged; and secondly, that the heroin was delivered by the defendant and no one else. In other words, the defendant alleges that the evidence presented in the trial court supports two reasonable theories compatible with his innocence. One theory is that agent Lackey may have possessed the heroin before he entered the defendant's apartment. The defendant's other theory is that some person other than the defendant may have transferred the heroin to Lackey.

■■ There is, however, substantial circumstantial evidence in the record from which it could be inferred that agent Lackey did not possess the heroin before he entered the defendant's apartment. The testimony of agent Kocis, Tim Moulton, and Kathy Moulton all indicate that the heroin possessed by agent Lackey after he left the defendant's apartment was not in his, Lackey's, possession before he entered the apartment. On the other hand, there is no evidence supporting the defendant's theory that agent Lackey possessed the heroin before he entered the apartment. We, therefore, conclude that the theory that agent Lackey was in possession of the heroin before he entered the defendant's apartment is not a reasonable hypothesis of innocence.

■■ There is also sufficient circumstantial evidence to support a finding that agent Lackey obtained the heroin from the defendant and not from some other person. The testimony of agent Kocis, Tim Moulton, and Kathy Moulton refutes the theory that there may have been some unknown party in the apartment who transferred the heroin to agent Lackey. Nor does the record reveal any evidence to support the theory that either Tim or Kathy Moulton sold the heroin to agent Lackey. The defendant introduced no evidence to support such a theory. Hence, we conclude that the theory that some person other than the defendant transferred the heroin to agent Lackey is not a reasonable hypothesis of innocence consistent with the evidence introduced in the trial court.

■■ Since the proof supports neither of the defendant's theories of his

innocence, we find that the trial court did not err in overruling the defendant's motion for a directed verdict. The circumstantial evidence present in the instant case was of a sufficiently conclusive nature and tendency for the trial court to conclude that the defendant was guilty beyond a reasonable doubt.

The defendant also contends that the trial court erred in admitting State's Exhibits Nos. One and Two into evidence. These exhibits were the two packs of heroin allegedly purchased by agent Lackey from the defendant. The defendant objected to the admission into evidence of these exhibits on the ground that the State failed to show a connection between the defendant and these State's exhibits. The defendant did not object on the ground that the State failed to demonstrate a proper chain of custody of the exhibits.

■■ We find no error in the trial court's overruling of the defendant's objection to the admission into evidence of State's Exhibits Nos. One and Two. There is testimony that the defendant possessed two tinfoil packs of heroin when he entered his apartment with agent Lackey. As previously recounted, there is sufficient circumstantial evidence to prove that agent Lackey and the defendant were alone in the apartment and that agent Lackey purchased the tinfoil packs of heroin from the defendant. Thus, the State succeeded in establishing a connection between the defendant and State's Exhibits Nos. One and Two.

The defendant's remaining contention is that the trial court erred in denying his motion for a continuance. In order to review this contention it becomes necessary to review the events surrounding the defendant's request for a continuance.

The defendant was arraigned on November 2, 1972, at which time the trial court granted the defendant 20 days to file motions for discovery. On December 28, 1972, the defendant filed several motions for discovery. One motion requested the trial court enter an order directing the State to provide the defendant with a list of prosecution witnesses and their last known addresses. Another motion requested the trial court enter an order which would direct the State to disclose the names and last known addresses of persons whom the State intended to call as witnesses at the hearing or trial. The trial court failed to enter any orders pursuant to these motions. Nevertheless, the State, on January 15, 1973, filed its purported compliance with defendant's motion for a list of witnesses. This list contained the names and addresses of five persons. Included therein was the name and address of Pete Lackey, the undercover agent for the Illinois Bureau of Investigation who had allegedly purchased the controlled substance from the defendant. Pete Lackey had died on November 27, 1972, prior to the State's purported com-

pliance with the defendant's motions. On January 16, 1973, 1 day before the defendant's trial, the State *filed* a notice of additional witnesses listing Tim Moulton and Kathy Moulton as persons to be called as witnesses at the hearing or trial. No address was included in such notice other than "St. Louis, Missouri."

On January 17, 1973, the date the cause was called for trial, the defense counsel presented an oral motion for continuance for purposes of discovery of the witnesses Tim Moulton and Kathy Moulton. After hearing the arguments of counsel the trial court denied the motion for continuance, but alternatively granted the defense counsel an opportunity to interview the witnesses Tim and Kathy Moulton.

■■ It is well established that prosecution witnesses whose names are not included on the indictment or in the list furnished the defendant on his motion, may not be permitted to testify *to the surprise or prejudice* of the defendant. (Ill. Rev. Stat. 1971, ch. 38, par. 114—9; *People v. Weisberg*, 396 Ill. 412, 71 N.E.2d 671; *People v. Martin*, 74 Ill.App.2d 431, 221 N.E.2d 13.) Although the names were furnished by the State in the instant case, it is argued that the State's delay in so doing prevented the defendant from discovering and investigating the witnesses' testimony. No argument is advanced that the list of names furnished on January 15, 1973, was not timely; therefore, we are only concerned with the State's failure to furnish the names of Tim and Kathy Moulton until January 16, 1973.

As previously noted, the defendant did not file his motions for discovery within the time prescribed by the trial court. The State maintains that it was under no duty to comply with defendant's discovery motions since the trial court never ordered compliance. The defendant contends that the State's purported compliance on January 15, 1973, waived the requirement that the defendant's motion be filed and ruled upon. The defendant appropriately cites *People v. White*, 123 Ill.App.2d 102, 259 N.E.2d 357, in support of his contention. Therein this court held that, where the defense moves for a list of witnesses and the State furnishes a list of witnesses, the State has waived the requirement that the defendant's motion be filed and ruled upon. Accordingly, we find the State's position that it was under no duty to comply untenable.

■■ The defendant further contends that the Moultons' testimony was material to the State's case and that the denial of the requested continuance "emasculated" any attempt toward effective cross-examination. There can be little doubt that Tim Moulton was an important witness for the State. In fact, on the morning of the defendant's trial the trial court entered an order granting Tim Moulton immunity on the grounds that he was "a material witness." Moreover, if the defendant was in-

nocent, which had to be presumed at the time he requested the continuance, Tim Moulton's testimony concerning the trip to Edwardsville to purchase heroin would have come as a complete surprise. If, on the other hand, the defendant had received adequate notice that Moulton was a potential witness or his timely motion for a continuance was granted, any surprise resulting from Moulton's testimony would have been the consequence of defendant's or his attorney's failure to explore Moulton's potential testimony through appropriate means of discovery. If an adequate opportunity for discovery had been granted the defendant could have investigated, and possibly rebutted, Moulton's testimony. In the instant case, a bench trial, the defendant was granted a recess to discover, investigate, and to develop a strategy to handle Moulton's testimony. We find that this recess was manifestly insufficient to afford the defendant his right to confront and effectively cross-examine his accusers as required by the sixth amendment to the United States Constitution, which is applicable to state proceedings under the fourteenth amendment. See *Smith v. State of Illinois*, 390 U.S. 129, 19 L.Ed. 2d 956, 88 S.Ct. 748; *Pointer v. State of Texas*, 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065.

A more egregious aspect of the instant case, which we find considerably more disturbing, is the apparent "bad faith" on behalf of the State. The State sent the original list of witnesses to the defendant on January 15, 1973. It is rather inconceivable that the State was still unaware of agent Lackey's death and that it intended to call the Moultons as part of its case. Even more inexplicable is the fact that the supplemental list did not contain addresses other than "St. Louis, Missouri." Unlike the original list the notice of additional witnesses contained no street addresses. It *is* inconceivable that 1 day before the defendant's trial the State was unaware of the specific address of witnesses it intended to call the following day. No attempt has been made to demonstrate that the failure to furnish addresses was motivated by a fear for the witnesses safety.

■■ In *People v. Graves*, 6 Ill.App.3d 612, 615, 285 N.E.2d 236, 238, the court stated that "in the absence of a showing of bad faith":

> "It is for the court in the first instance to determine whether the delay was motivated for some unjustified advantage, or whether it was otherwise proper for any number of reasons."

While the trial court is bestowed with a wide range of discretion in allowing or denying requests for continuances (*e.g., People v. Davis*, 45 Ill.2d 514, 261 N.E.2d 314) and allowing the State to call witnesses not on the list of witnesses furnished to the defendant (*e.g., People v. Jones*, 13 Ill.App.3d 684, 301 N.E.2d 85), its discretion is not unlimited.

Here the defendant was prevented from properly preparing for trial because of the misconduct on the part of the State. Under these circumstances we have no alternative but to reverse the defendant's conviction and remand this cause for a new trial.

Accordingly, we remand this cause for a new trial to be conducted in a manner consistent with the views expressed herein.

Reversed and remanded.

G. MORAN and CARTER, JJ., concur.