THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CORINE J. BLOCK, Defendant-Appellant.

Second District   No. 2—87—1114

Opinion filed June 6, 1989.

Jeffrey B. Fawell, of Fawell & Fawel', of Wheaton, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Mary E. Gentile, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial in the circuit court of Du Page County, defendant, Corine J. Block was found guilty of theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(d)(1)) of property not exceeding $300 and was sentenced to a one-year term of probation and ordered to perform 100 hours of public service employment. Defendant contends on appeal that the State failed to prove beyond a reasonable doubt (1) that the property in question was stolen; (2) that defendant knew or reasonably should have known the property was stolen; and (3) that defendant had the intent to permanently deprive the owner of the benefit of the property at the time she took possession of the property.

The following evidence was adduced at trial. The complaining witness, Sharon Stevens-Springer, testified that between 2 and 2:30 p.m. on January 19, 1987, while working at C.N.A. Insurance Company in Downer's Grove, she noticed that her purse was missing from where she had placed it on the floor next to her desk. She had stepped away from her desk and saw it was missing upon her return. Stevens-Springer's desk was located in an open office area on the fifth floor. After checking the entire fifth floor, Stevens-Springer reported to the police that her purse was stolen.

On January 25, 1987, at noon, Stevens-Springer received a telephone call at home. The caller was a woman whose voice Stevens-

Springer didn't recognize. The caller, who refused to identify herself during the entire conversation, said she had Stevens-Springer's purse. According to Stevens-Springer, the caller agreed to meet her in Bellwood after she offered the caller some money. First, $10 was offered, but the caller said that was not enough. Eventually, $30 was agreed upon, and the caller agreed to meet Stevens-Springer at a Dominick's parking lot in Downer's Grove.

On cross-examination, Stevens-Springer stated that during their telephone conversation, she told the caller she could not drive to Bellwood because she had recently had surgery and could not drive that far. The caller said she had no transportation to Downer's Grove and would need someone to drive her there.

Following the telephone conversation, Stevens-Springer contacted the Downer's Grove police and proceeded to the Dominick's store. A car occupied by defendant, her daughter, and eight children drove up. Stevens-Springer had seen defendant's daughter at her office just prior to discovering her purse missing on January 19. Defendant approached Stevens-Springer and told her that a friend had the purse, that she knew what it was like to have her purse stolen, and that she talked the friend into letting her have the purse. Stevens-Springer recognized defendant's voice as the voice of the woman who had telephoned her earlier. Stevens-Springer and defendant then proceeded to the car that defendant arrived in, and, when Stevens-Springer was about to give money to defendant, the police interceded.

Officers Groce and Solava, Downer's Grove police officers, having been advised of the telephone call received by Stevens-Springer, waited in an unmarked car in the Dominick's parking lot. When they approached defendant, she produced the purse which Stevens-Springer identified as her missing purse. Defendant tried to explain that she had found the purse and was trying to return it to its rightful owner.

Defendant testified that the purse was brought to her house by a person named Joseph and that she did not know it was stolen. On cross-examination she stated that the individual who brought the purse was named Kevin and she did not believe the purse was his. Defendant found Stevens-Springer's name and telephone number in the purse and telephoned her. Defendant asked Stevens-Springer to pick the purse up at her home and did not ask for any money. Stevens-Springer asked defendant to bring the purse to her. Defendant offered to meet her at Bellwood, but Stevens-Springer apparently declined. Defendant told Stevens-Springer that she did not

drive and would have to pay someone to drive her to Downer's Grove. Stevens-Springer agreed to pay defendant $30. Defendant stated that she identified herself and her address over the telephone and that she never threatened to withhold the purse unless money was paid. Defendant stated that after meeting Stevens-Springer in the parking lot an hour or so after the conversation, she returned the purse immediately.

Defendant was charged with theft in that she on January 25, 1987, "knowingly obtained control over certain stolen property *** under such circumstances as would reasonably induce said defendant to believe the property was stolen and with intent to deprive *** permanently of the benefit of said property." Theft is defined in section 16—1(d)(1) of the Criminal Code of 1961 as follows:

"A person commits theft when he knowingly:

\* \* \*

(d) Obtains control over stolen property knowing the property to have been stolen *** or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property ***." Ill. Rev. Stat. 1987, ch. 38, par. 16—1(d)(1).

Defendant initially argues that the evidence does not establish beyond a reasonable doubt that Sharon Stevens-Springer's purse was in fact stolen, and not merely lost or mislaid. Defendant contends that the evidence merely establishes that at some point Stevens-Springer became aware that her purse was missing, but does not preclude the possibility that she lost or mislaid it, or that it was not accidentally moved or taken by some other person or persons, such as, for instance, a janitor.

Defendant maintains that the instant case is governed by *People v. Weiss* (1976), 34 Ill. App. 3d 840, 341 N.E.2d 79, wherein it was held that evidence that a telephone was once owned by General Telephone and that General Telephone did not sell the particular model of telephone was insufficient proof that the telephone was stolen in light of the defendant's testimony that he found the telephone abandoned in an apartment. We find *Weiss* to be factually distinguishable and of little guidance in this case.

■■ ■ While, as defendant notes, there is no direct evidence that someone observed the purse being taken, it is well established that circumstantial evidence may be sufficient to show that property is stolen. (*People v. Hansen* (1963), 28 Ill. 2d 322, 338, 192 N.E.2d 359.)

In the instant case, the complaining witness testified as follows:

"Q. Where was your purse located at the time?

A. I believe it was on the floor by my desk. I didn't have a credenza at that time.

Q. When did you first notice that your purse was missing?

A. I had stepped away from my desk and when I came back, it was about between 2:00 and 2:30 and I noticed it was gone."

Defendant contends that Stevens-Springer's statement that she "believed" the purse was by her desk indicates that she herself was unsure where she had left her purse. We, however, do not interpret her answer as expressing any significant degree of uncertainty. Defendant further notes that Stevens-Springer did not establish a time or date when she could last recall seeing her purse. We disagree. Stevens-Springer testified as to the location of her purse at her desk on January 19 at about 2 or 2:30 p.m., as that was the only time period that had theretofore been discussed in her testimony. Defendant's suggestion that Stevens-Springer might normally leave her purse at the office at night is both speculative and contrary to human experience.

■ The evidence shows that Stevens-Springer's purse disappeared from an area under her control, raising a strong inference that the purse was stolen. While this evidence does not exclude every possible explanation for the disappearance of the purse other than theft, triers of fact are not required to search out possible explanations compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Dabrowski* (1987), 162 Ill. App. 3d 684, 692, 515 N.E.2d 1345; *People v. Cross* (1981), 100 Ill. App. 3d 83, 86, 426 N.E.2d 623.) We find defendant's hypothetical explanations for the purse's initial disappearance improbable and insufficient to create a reasonable doubt.

■■ ■ Defendant next contends that the evidence was insufficient to establish that she knew the purse was stolen at the time she took possession of it. Defendant was charged with obtaining control over stolen property under such circumstances as would reasonably induce her to believe the property was stolen. Guilty knowledge may be established by proof of circumstances which would induce the belief in a reasonable mind that the property was stolen, and it is unnecessary to show actual or positive knowledge of the theft. (*Dabrowski*, 162 Ill. App. 3d at 691-92, 515 N.E.2d at 1350.) Here, defendant testified that she received possession of a woman's purse from a person named Joseph, whom she later called Kevin. This

name discrepancy was never explained. Defendant herself testified that she did not believe the purse belonged to that individual. That defendant took the purse under these circumstances without inquiry as to its source or the title of the one from whom it was received is indicative of guilty knowledge. (See *People v. Grodkiewicz* (1959), 16 Ill. 2d 192, 197, 157 N.E.2d 16.) Further, Stevens-Springer testified that in the conversation in the parking lot, defendant told her that her friend had the purse, that she knew what it was like to have her purse stolen, and that she talked her friend into letting her have the purse. We note that defendant states in her appellate brief that she was told the purse was not stolen. We find no support for this assertion in the record. Finally, while, as defendant notes, she testified at trial that she did not believe the purse was stolen and the circumstances gave no indication that it was stolen, the trier of fact was not required to accept this exculpatory statement and could instead rely on the circumstantial evidence of guilt. *People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358; *Dabrowski*, 162 Ill. App. 3d at 693, 515 N.E.2d at 1351.

■ Defendant next argues that the evidence does not establish beyond a reasonable doubt that she had the intent to permanently deprive the owner of the purse of its use or benefit at the time she received possession of the purse. Defendant cites no relevant authority in support of her argument that the evidence of her intent is insufficient, and we find it to be without merit. The testimony of the complaining witness, Sharon Stevens-Springer, indicates that defendant was unwilling to return the purse until offered a reward and refused to identify herself. While defendant contradicted this testimony, stating that Stevens-Springer was free to come to her house for the purse, and defendant asked for money only to pay her way to Downer's Grove, the trial judge stated that he disbelieved her testimony. We note that requiring a reward for return of the purse constitutes intent to permanently deprive. Ill. Rev. Stat. 1987, ch. 38, par. 15—3(c).

Despite the evidence of criminal intent, defendant argues that there is no evidence showing that she had formed the intent at the time she first received possession of the purse. Defendant has cited no direct authority for the proposition that the intent to permanently deprive must exist at the time possession is obtained, but maintains that the conclusion implicitly follows from *People v. Weiss* (1976), 34 Ill. App. 3d 840, 341 N.E.2d 79, which states that an essential element of the offense of theft by possession is that "[the person charged] received the property for his own gain or to prevent the

owner from again possessing it." *Weiss*, however, did not involve the particular issue before this court. We do not believe its general statement of the elements of the offense was directed at the time frame in which criminal intent must arise, and we decline to resolve the issue on the basis of the implications of this language. 34 Ill. App. 3d at 842, 341 N.E.2d at 82.

Defendant further argues that the intent to deprive must exist at the time possession is first acquired by analogy to the holding in *People v. Dickerson* (1976), 41 Ill. App. 3d 464, 353 N.E.2d 427, that knowledge that the property is stolen must be when the accused receives it. While we agree with the decision in *Dickerson* that knowledge that the property is stolen when the accused has received it is an element of the offense of theft under section 16—1(d) (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(d)), a separate element of the offense of theft under 16—1(d), which is also common to subsections (a) through (c), is that defendant either "(1) [i]ntends to deprive the owner permanently of the use or benefit of the property; or (2) [k]nowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or (3) [u]ses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit." (Ill. Rev. Stat. 1987, ch. 38, pars. 16—1(d)(1), (d)(2), (d)(3); *cf. People v. Morrissey* (1985), 133 Ill. App. 3d 1069, 1072, 479 N.E.2d 1238.) Here, defendant was charged with violating section 16—1(d) by intending to permanently deprive Stevens-Springer of the benefit of her purse and the contents pursuant to subsection (1).

Section 15—3 of the Code defines "permanently deprive" as follows:

"(a) Defeat all recovery of the property by the owner; or

(b) Deprive the owner permanently of the beneficial use of the property; or

(c) Retain the property with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or

(d) Sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner." Ill. Rev. Stat. 1987, ch. 38, par. 15—3.

■ There is no requirement in either the statutory language of this element of theft in section 16—1(d)(1) or in the statutory definition of "permanently deprive" in section 15—3 that the intent to permanently deprive must be proved to be formed simultaneously with the obtaining of control over stolen property. Moreover, subsections

16—1(2) and 16—1(3) demonstrate that the statutory scheme contemplates that the requisite mental state can be proved by evidence of conduct subsequent to taking possession. We, therefore, reject defendant's contention.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.